UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CANDICE KRUEGER,

                       *Plaintiff*,                                   **COMPLAINT**

  -against-

CARERITE CENTERS, LLC,                                    **PLAINTIFF DEMANDS**
CORTLANDT HEALTHCARE, LLC                         **A JURY TRIAL**
and CORTLANDT OPERATIONS, LLC,

                       *Defendants.*
------------------------------------------------------------------------X

       Plaintiff Candice Krueger, as and for her Complaint, respectfully alleges, all upon information and belief, as follows:

## JURISDICTION AND VENUE

    1.    This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1331, in that certain of the Plaintiff's claims arise under the laws of the United States, namely The Age Discrimination in Employment Act of 1967, 29. U.S.C. §623(a)(1) ("the ADEA") and supplemental jurisdiction exists over the remainder of Plaintiff's claims under New York Executive Law §296(1)(a).

    2.    Venue is proper under 28 U.S.C §1391(b) because the events underlying this action occurred within the Southern District of New York and because Defendants do business within the District.

    3.    Plaintiff filed a charge of unlawful discrimination with the Equal Employment Opportunity Commission on July 27, 2022 and received a Notice of Right to Sue against Defendant dated January 10, 2023.

**IDENTITY OF THE PARTIES**

4. At all relevant times mentioned herein, Plaintiff Candice Krueger was employed by Defendants CareRite Centers, LLC, Cortlandt Healthcare, LCC and/or Cortlandt Operations, LLC until she was terminated on June 15, 2022 because of her age.

5. CareRite Centers, LLC is a domestic limited liability company duly organized and existing under the laws of the State of New Jersey that services the needs of short-term rehabilitation, skilled nursing and long-term care for thousands of patients across the United States.

6. Cortlandt Healthcare, LLC is a domestic limited liability company duly organized and existing under the laws of the State of New York that provides senior care and post-acute care programs in Westchester County, State of New York.

7. Cortlandt Operations, LLC is a domestic limited liability company duly organized and existing under the laws of the State of New York and does business in the County of Westchester, State of New York.

8. Defendants CareRite Centers, LLC, Cortlandt Healthcare, LLC and Cortlandt Operations, LLC form a single integrated entity that employed Krueger, so that, unless otherwise indicated, the three Defendants are collectively referred to herein as "CareRite."

**BACKGROUND RELEVANT TO ALL CAUSES OF ACTION**

9. Krueger began her employment with the entity known as Cortlandt Healthcare, LLC ("Cortlandt") in October 2004 as an Administrative Assistant.

10. At all relevant times, Krueger was qualified for her position and received excellent feedback about her performance.

11. In or around 2014 or 2015, CareRite bought Cortlandt Healthcare, LLC and the

Cortlandt facility became one of a number of facilities in CareRite's network of rehabilitation and skilled nursing facilities.

12. Despite the acquisition, the Cortlandt facility continued to be known as "Cortlandt Healthcare."

13. In or around December 2014, Krueger was promoted to the position of Director of Human Resources by then-Administrator, Keala Dolfo ("Dolfo").

14. At the time of her promotion, Krueger was 61 years of age and was the oldest or one of the oldest employees in the region.

15. Krueger performed successfully and continued to receive positive feedback in her role as Human Resources Director.

16. In December 2021, Faith Leveseque ("Levesque") replaced James Noonan as the Administrator of Cortlandt.

17. At the time, Krueger was approximately 68 years old and Levesque was approximately 40 years old, so that Levesque was about 28 years younger than Krueger.

18. In or about February 2022, Krueger's supervisor Stefania Velandia ("Velandia") informed Krueger that she would be leaving CareRite.

19. Velandia and Krueger had enjoyed an excellent working relationship and Krueger never received anything but positive feedback from her.

20. In March/April 2022, Krueger was advised that Kevin Gilbert ("Gilbert"), a male who was about 40 years of age, would be taking over for Velandia, and would become Krueger's supervisor.

21. After Gilbert became Krueger's supervisor, he requested a meeting with Krueger.

22. Gilbert arrived to the meeting with another CareRite employee named Jennifer Cortez ("Cortez"), who, like Gilbert, appeared to be in her 40s.

23. During the meeting, Krueger was told that she would now be reporting to Cortez.

24. Thereafter, Cortez repeatedly asked Krueger about her daily activities and Gilbert and Cortez "audited" approximately 10-15 of Krueger's files.

25. Following the audit, Gilbert and Cortez had a meeting with Krueger and asked her if there was anything specific that she needed to perform her duties.

26. Krueger expressed that she could use help in the office because the COVID-19 pandemic had caused staffing challenges and Krueger was working extra hours to keep up with the workload, oftentimes coming in on the weekend.

27. Gilbert and Cortez responded to Krueger's request by telling her that she would not be receiving extra help and then left without further comment.

28. Shortly after that meeting, Krueger was asked to participate in a Zoom meeting with Gilbert, Coretz and Leveseque.

29. During the meeting, Krueger was presented with a job description for her position, which she was asked to sign.

30. Gilbert told Krueger to pass over the "qualifications" section, because "everyone knew" Krueger was qualified.

31. In reviewing the job description, Krueger observed that the job description stated the work Krueger had been performing for 7-8 years, though it also it indicated that a Bachelor's Degree was required for the position, which she did not have, though she had successfully performed the role for years.

32. Gilbert, Coretz and Leveseque then went over the job description with Krueger and requested that Krueger sign it.

33. Krueger asked for a copy of the job description and to be given an opportunity to review it further.

34. A copy of the job description was emailed to Krueger on April 1, 2022 and she responded on April 5, 2022 with some questions she had that she felt required clarification.

35. Krueger never received answers to her questions.

36. On Monday, June 13, 2022, Krueger was surprised to learn from a colleague that a woman named Jessica Babs, who was in her 30s, would be coming to work in Krueger's office effective June 16, 2022.

37. Krueger had not been told anything about a new hire for her office.

38. On June 15, 2022, Krueger was called into Levesque's office and terminated.

39. Krueger was then escorted out of the building by the Director of Maintenance, which was humiliating.

40. The reason she was given was that Cortlandt was "heading in a new direction, a new vision."

41. Clearly the "new vision" was a younger vision, as the new individuals who had been hired since Levesque arrived were all much younger than Krueger, and Krueger was replaced by a woman who was approximately 30 years younger than she was.

42. As a result of CareRite's unlawful conduct, Krueger has suffered the adverse effects of age discrimination, which includes damages to the quality of her life, her self-esteem, self-respect and financial and emotional well-being because she was subjected to the humiliating and demeaning

type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss into the future.

43. The acts taken by CareRite were done in such bad faith and/or reckless indifference to my protected rights under the operative Human Rights Law that, in addition to all the damages inflicted upon me and in addition to all the relief to which Krueger may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for its discriminatory conduct in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

### AS FOR A FIRST CAUSE OF ACTION ON BEHALF OF KRUEGER AGAINST CARERITE FOR AGE DISCRIMINATION IN VIOLATION OF THE ADEA

44. Krueger repeats, re-alleges and incorporates in full paragraphs 1 through 43 of this Complaint, as though fully set forth at length herein.

45. At all relevant times, Krueger was in a protected category under The Age Discrimination in Employment Act of 1967, 29. U.S.C. §623(a)(1) ("the ADEA"), because she was 68 years old at the time she was terminated on June 15, 2022.

46. Krueger was fully qualified for her position and performed her duties in a satisfactory fashion and was in a position to continue doing so for the remainder of her career.

47. Given the circumstances surrounding Krueger's termination, including the fact that numerous younger people were brought into the facility, that Levesque told Krueger at the time of her termination that Cortlandt was "heading in a new direction, a new vision," and the fact that she was replaced by a woman who was 30 years younger, there is a very real inference that Krueger was discriminated against and terminated because of her age.

48. The aforementioned acts of CareRite constitute unlawful discrimination on the basis of age against Krueger in violation of the ADEA, 29 U.S.C. §623(a)(1), which provides, *inter alia*, that:

> It shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . .

49. Krueger has been personally and professionally humiliated, demeaned and degraded, all of which was caused by CareRite's conduct in violation of Krueger's human rights.

50. As a direct and proximate result of CareRite's conduct complained of herein, Krueger has suffered damages, injuries and losses, both actual and prospective, which include the irreparable damage to her career and emotional pain and suffering, so that Krueger seeks in this First Cause of Action compensatory damages in an amount to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

51. Here, the acts of CareRite were done so clearly with reckless indifference in the face of a perceived risk that its actions would violate Krueger's protected rights under the ADEA so that, in addition to all the damages inflicted upon Krueger and in addition to all the measures of relief to which Krueger may properly be entitled herein, CareRite should also be required to pay punitive damages in an award to be determined at a trial of this matter as punishment for its discriminatory conduct, in order to deter CareRite and others similarly situated from engaging in such conduct in the future.

52. Krueger, therefore, seeks judgment against CareRite on this First Cause of Action in an amount to be determined at trial for compensatory damages, punitive damages, costs, pre-judgment interest and reasonable attorney's fees .

## AS FOR A SECOND CAUSE OF ACTION ON BEHALF OF KRUEGER AGAINST CARERITE FOR AGE DISCRIMINATION IN VIOLATION OF §296(1)(a) OF THE NEW YORK STATE HUMAN RIGHTS LAW

53. Krueger repeats, realleges and incorporates in full paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54. Krueger was in a protected class under the New York State Human Rights Law because of her age.

55. Up to and during the time of CareRite's wrongful, unlawful, and discriminatory actions against her, Krueger was fully qualified for and capable of performing her position, as confirmed by her longevity of more than seventeen years.

56. Given the circumstances surrounding Krueger's termination, including the fact that numerous younger people were brought into the facility, that Levesque told Krueger at the time of her termination that Cortlandt was "heading in a new direction, a new vision," and the fact that she was replaced by a woman who was 30 years younger, there is a very real inference that Krueger was discriminated against and terminated because of her age.

57. The aforementioned acts of CareRite constitute unlawful age discrimination against Krueger in violation of Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) (referred to herein as "the New York State Human Rights Law"), which *inter alia*, states that:

> It shall be unlawful discriminatory practice: (a) For an employer . . . because of the . . . age . . . of any individual . . . to discharge from

    employment such individual or to discriminate against such individual
    in compensation or in terms, conditions or privileges of employment.

58. As a proximate result of CareRite's conduct, Krueger has been adversely affected in her employment, her well-being, in the quality of her life and in her normal life's pursuits, and Krueger believes that CareRite's conduct complained of herein has and will continue to have a devastating effect upon her life, all of which Krueger alleges to be in the amount of Three Million Dollars ($3,000,000).

59. CareRite, because of its violations of the New York State Human Rights Law, is also liable to Krueger for punitive damages pursuant to §297(9) and reasonable attorney's fees pursuant to §297(10), in addition to pre-judgment interest and costs.

60. Here, CareRite's conduct towards Krueger shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Krueger's rights under the New York State Human Rights Law, or that its unlawful actions against Krueger were so reckless as to amount to a disregard of Krueger's rights, so that in addition to all the damages inflicted upon Krueger and in addition to all the measure of relief to which Krueger may properly be entitled herein, CareRite should also be required to pay punitive damages as punishment for its reprehensible conduct in the further amount of Four Million Dollars ($4,000,000) in order to deter CareRite and others similarly situated from such conduct in the future.

61. Krueger, therefore, seeks judgment against CareRite on this Second Cause of Action, including, among other things, for compensatory damages in the sum of Three Million Dollars ($3,000,000), and the additional further sum of Four Million Dollars ($4,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this second cause of action, making a total of Seven Million Dollars ($7,000,000).

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff Candice Krueger demands judgment against Defendants on the First Cause of Action for compensatory damages and punitive damages in amounts to be determined at trial; on the Second Cause of Action in the sum of Three Million Dollars ($3,000,000) in compensatory damages and the additional and further sum of Four Million Dollars ($4,000,000) in punitive damages; plus, for each Cause of Action, pre-judgment interest, the costs of this action and reasonable attorney's fees; and for such other relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By: _____
DAVIDA S. PERRY
BRIAN HELLER
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565